LOVERING v. DUPLEX POWER CAR CO.

1. CORPORATIONS—"BLUE SKY" LAW—SALES OF STOCK—"AGENT"—
   BROKER—STATUTES.

   A person engaged by a corporation to sell its corporate
   stock on commission, after its capitalization is duly ap-
   proved and it is duly licensed to sell its stock under
   the provisions of the "Blue Sky" law, Act No. 46, Pub.
   Acts 1915 (3 Comp. Laws 1915, § 11945 et seq.), is an
   "agent" under section 12 (§ 11956) of said act.

2. SAME—STATUTES—VIOLATION OF STATUTE—DEFENSES.

   Under said section it is the duty of the corporation to
   register its agent engaged in selling its stock and pay the
   fee therein provided, and it cannot urge its violation of
   this provision of the law to defeat recovery by the agent
   in an action for his commissions on the sale of said stock.

3. TRIAL—ISSUES—EVIDENCE—SUFFICIENCY.

   In an action for commissions by an agent of a corporation
   for the sale of its stock, where plaintiff's claim was sup-
   ported by the record, and the pivotal questions were
   questions of fact, the judgment for plaintiff, based upon
   the verdict of the jury, will be affirmed.

Error to Eaton; Smith, J. Submitted January 7,
1919. (Docket No. 11.) Decided April 3, 1919.

Assumpsit by James L. Lovering against the Duplex
Power Car Company for commissions on the sale of
certain stock. Judgment for plaintiff. Defendant
brings error. Affirmed.

*R. L. Sowers* and *Colgrove & Potter*, for appellant.

*L. H. McCall* and *Frank A. Dean*, for appellee.

MOORE, J. November 3, 1916, plaintiff commenced
this suit to recover for commissions to which he
claimed he was entitled on sales of the stock of defend-

ant company made by him for it.   There is no question but what he made sales of stock.   He was paid commissions to the amount of $470, and defendant claims he was paid in full.   The plaintiff claims he was entitled to recover $1,870 more.

At the close of the plaintiff's case the following occurred:

"*Mr. Potter:* May it please the court: The defendant in the above entitled cause moves to direct a verdict for the defendant at this time for the following reasons:

"*First.* The plaintiff in this case is a broker, engaged in the business of a broker, and he admits that he never filed with the county clerk of any county in which he was doing business any certificate in writing signed by him or verified in any way, setting forth the fact that he was engaged in that business.   I am reading from section 5271, 2 Compiled Laws of 1897; also 5274.   (Reading.)   It is conceded in this case by the testimony of the party that he did not file any certificate with the county clerk in pursuance of that statute, and if that statute is applicable to this case, he was doing business in violation of the penal provisions of the law.

"*Second.* For the reason that we have in this State in force Act No. 46 of the Public Acts 1915, which statute has been declared constitutional by the Supreme Court of the United States, and generally known as the 'Blue Sky' law.   The parts of the statute I desire to call your honor's attention particularly to are the following provisions: Section 2, section 3, section 10 and section 23.   (Reading.)"   Citing *Buckley* v. *Humason,* 16 L. R. A. 423 (50 Minn. 195, 52 N. W. 385); *Niagara Falls Brewing Co.* v. *Wall,* 98 Mich. 158; *Cashin* v. *Pliter,* 168 Mich. 391.

This motion was overruled.

The defendant then put in its testimony and the case was submitted to the jury which returned a verdict in favor of the plaintiff in the sum of $1,272. From a judgment on this verdict the case is brought here by writ of error.

The defendant proffered 57 requests to charge. These were refused except as covered by the general charge of the court. This charge covers the claims of the parties and the issues involved so fully that we quote from it freely as follows:

"This is an action of assumpsit brought by the plaintiff, Mr. Lovering, against the defendant, the Duplex Power Car Company, to recover for commissions claimed to be due him from defendant company. The plaintiff claims that he was employed by the defendant to solicit subscriptions for stock of the defendant company, and for all such subscriptions which he solicited and secured he was to receive a commission of ten per cent.

"About the amount of the commission, that is to say, ten per cent. for all stock sold, there seems to be no dispute between the parties, and the only dispute is as to the amount of stock Mr. Lovering sold for which he should recover, his claim being that he sold, according to the agreement, a certain amount of the stock, and the defendant claiming he sold a much less amount and the question for you to determine is, How much stock did Lovering sell upon which he is entitled to his commission at the rate of ten per cent.?

"Now, gentlemen, I want you to read the certificate of authority and a paper which possibly may be called a contract, although I will not call it a contract, between the parties. Mr. Lovering went to work under this certificate of authority, dated the 22d day of August, 1916:

"'To whom it may concern: This is to certify that Mr. J. L. Lovering is taking orders for stock for the Duplex Power Car Company and that the purchaser can send his check covering the number of shares desired to the First National Bank, Charlotte, Michigan, or direct to the Company, and certificates will be forwarded by return mail.

"'THE DUPLEX POWER CAR CO.,
"'F. P. TOWNE, Pres.'

"Later this was entered into, this which possibly may be called a contract, although I am not calling it a contract:

"'September 20, 1916.

"'To whom It May Concern: This is to certify that the bearer Mr. J. L. Lovering whose signature is herewith'—and he has written in his signature—'is duly authorized to receive and solicit application for a limited number of shares of stock of the Duplex Power Car Co. at the original par value of ten dollars ($10.00) per share, all checks to be made payable to the said company.

"'Very truly yours,

"'THE DUPLEX POWER CAR CO.,

"'Per F. P. TOWNE, Pres.'

"Now by these papers that I have read to you, gentlemen, the dealings of these parties are governed, and in view of the situation of the company, as I suggested to you in the commencement of this charge, the parties ought by them to be governed.

"It is a general principle of the law that when the agent has fully completed his undertaking—the agent of any institution or company or person has fully completed his undertaking according to its terms, he is entitled to his compensation. And if you find in this case that Mr. Lovering did all he was bound to do under his authority to act, his right to his compensation is complete and he cannot be deprived of it, because the principal then fails to avail himself of the benefit of the acts, or refuses to do what he had agreed to do upon performance by the agent.

"I instruct you that Mr. Lovering was entitled to his commission when he procured a purchaser ready and willing and able to take and pay for the stock by check with the application or to be remitted at once, and his right to his commission does not depend upon the contingency of the principal's acceptance of the subscription, but rather upon Mr. Lovering's performance of his part of the contract, and the principal cannot deprive the agent of his commission by refusing to accept the subscription or refusing to issue and deliver the stock which Mr. Lovering's efforts have resulted in securing.

"Now, gentlemen, this that I am giving you now is somewhat modified by a later instruction as to his authority and as to a revocation, which you will easily apply, I am sure, when you get to your jury room.

"Upon the same principle, an agent has earned the

commission when he has procured a purchaser who is ready, willing and able to take the stock upon the terms designated, to have check attached to his application or sent by the applicant at once, and the principal cannot defeat the agent's claim for commission by refusing to sell or deliver the stock or by refusing to sell except upon other and different terms nor by ignoring the agent, nor by putting himself in a position where he cannot carry out his part of the agreement.

"I instruct you that Mr. Lovering is entitled to recover in this case his commissions on all stock subscriptions taken by him from financially responsible persons with check for same attached to the application or to be sent in by the applicant at once, which subscriptions were forwarded by him or delivered by him to the defendant company within the scope of an admitted authority of the company until his authority was revoked by defendant company.

"In determining when the authority of Mr. Lovering to sell stock was revoked by defendant company, you have the right to take into consideration the dates when certificates of stock were issued by defendant company to persons whose subscriptions therefor were obtained by Mr. Lovering.

"And I instruct you that it is a principle of law that a revocation of the agent's authority, and (in this case) the authority of Mr. Lovering, to solicit subscriptions for stock, cannot be revoked by the principal so as to affect acts already done, or commissions already earned.

"In other words, I instruct you that the plaintiff, Mr. Lovering, is entitled to recover his commission on all subscriptions for stock taken by him within the scope of his authority before receiving notice of revocation of his authority by the defendant company.

"I instruct you further that a revocation by a principal of an agent's authority should be unequivocal, and leave no doubt as to the principal's intentions. Any ambiguity or uncertainty in such a case should be construed most strongly against the principal, in whose power it lay to prevent such a result.

"I instruct you further that it was in the power of defendant company to have revoked the authority

of Mr. Lovering to act for it at any time the said company so wished, but it was incumbent on said defendant to have done so plainly, and in language that could not be charged with equivocation or uncertainty.

"I instruct you further, that Mr. Lovering is entitled to recover his commissions on all subscriptions of stock taken by him before his authority to act was revoked, and which said subscriptions had checks attached to the applications or in which the applicants had forwarded their checks direct to the company, as they had a right to do, or were forwarded or delivered to or received by defendant company, provided that said subscribers were ready, willing and able to pay for said stock.

"I instruct you further, that a signed subscription or application for shares of stock made by responsible persons, accompanied by check payable to the corporation, drawn against sufficient funds in the hands of a banker, which check should be paid by banker on presentation, is a good payment for such stock.

"I instruct you further, that plaintiff has performed his part of the contract under the above arrangement when he obtains the subscriptions or applications for stock, and forwards or delivers the same to the defendant company with check for amount due attached to the application, or upon receipt of a check direct from persons who purchased the stock by the company.

"Now, gentlemen, the defendant claims that the arrangement made with the plaintiff was for the sale of ten thousand dollars par value of the stock of the defendant company, or substantially that amount, and that when he made an arrangement with the plaintiff and gave him a writing showing that he had authority to sell stock of the defendant company that said writing stated that the plaintiff was entitled to sell 'a limited number of shares of stock' is not fixed. It is evident that the defendant did not give the plaintiff general authority to sell an unlimited amount of stock or to sell all of the stock which the defendant had on hand. But that the arrangement was for the sale of an amount of stock less than the whole amount which the defendant had on hand.

"You have a right to consider, gentlemen, the cir-

cumstances surrounding the parties and the verbal testimony in the case in order to determine what was meant by the parties in the use of the term 'a limited number of shares of stock' in the writing referred to. When you shall have determined what the parties meant and understood and intended by the use of the term, 'a limited number of shares of stock,' of the defendant company, then the plaintiff is not entitled to recover for commissions upon the sale of stock in excess of the amount which the parties understood and intended to designate by the use of the term, 'a limited number of shares of stock' for the reason that the plaintiff had no contract or agreement covering an amount of stock in excess of that amount and the defendant was under no obligations to sell and had not agreed to sell an amount of stock in excess of that amount.

"If you shall find from the evidence that the time in which the plaintiff had authority to sell the stock of the defendant company expired before the plaintiff or the customers of the plaintiff tendered the money on the alleged sales sued for, then the plaintiff is not entitled to recover.

"Now, gentlemen, the written authorization given by defendant to plaintiff to sell stock provided—and I have read it to you—that plaintiff should take subscriptions to be paid for by checks therefor or payable to the defendant company, and send the checks with the subscription or application for stock or to be sent by the applicant at once to the company, but I instruct you that the fact that in some particular instances defendant did issue the stock and send the stock to a bank with draft attached for collection, would not amount to a general authorization by defendant that plaintiff had authority to accept subscriptions generally and insist that defendant was bound to issue the stock and send the stock to a bank or any bank which plaintiff might designate with draft attached, but defendant had a right to require plaintiff to have the check or draft accompany the subscription or that it be sent to him as soon as the applicant could mail it to him, and if plaintiff failed to forward the check or draft at the time of the filing of the subscription and the applicant failed to send any check to the defend-

ant company then plaintiff would not be entitled to a commission where the check failed to accompany the subscription.

"Now, gentlemen, no time was fixed in writing in the agreement between the plaintiff and defendant during which said contract was to continue. Under the circumstances the time during which the plaintiff might sell stock for defendant rested in the option of the defendant, Duplex Power Car Company.

"When no time is agreed upon during which a broker is employed he is entitled to a reasonable time in which to gain results, but the principal or employer has a right to limit or revoke the authority of the broker in good faith at any time after his employment, where no time of employment is fixed, and if the authority of the plaintiff in this case was revoked, or if a time limit was fixed to his contract by the principal, the Duplex Power Car Company, in good faith, after the contract was originally made, the plaintiff cannot recover commissions on sales made thereafter.

"On Monday, October 9, 1916, the defendant company wrote a letter in which it said:

"'We trust you will be able to dispose of all we have to dispose of this week, as we wish to have the matter closed up, and we judge from the way you are disposing of it now, you will have no trouble in doing this. We thought last week would be the limit we could hold it open, but we are extending it on to this week, if you had not disposed of it before that time.'

"The defendant claims that this letter was written extending the time given to plaintiff verbally, and if you shall find that prior to this time a limit had been placed upon the contract, this letter would operate as an advance of the time to and including the week of October 9, 1916, and the plaintiff would be entitled to recover commissions on any sales actually made, consummated and carried out during this time.

"The mere fact that the defendant accepted business tendered by the plaintiff after the week of October 9, 1916, and accepted payment and paid plaintiff his commission thereon would not in and of itself operate to extend the time of the contract beyond that date.

"The defendant claims it employed plaintiff to sell stock. In order to entitle the plaintiff to recover, he

must have made sales within the limits of his contract as to time, terms and amount.

"The plaintiff cannot recover a commission merely because he obtained offers in writing or because he obtained orders for the stock. The plaintiff is not entitled to a commission when he brings a mere paper offer; but in order to entitle the plaintiff to recover, it is necessary for him to show an actual sale of the stock, or that he produced a purchaser who tendered the money within the time limited by the contract for the sale of the stock.

"The plaintiff is not entitled to recover from the defendant commission for unsuccessful efforts to sell stock.

"Now there is a radical difference between a contract to sell or purchase and an actual sale or purchase. As applied to this case the plaintiff is not entitled to recover unless he produced a purchaser ready, able and willing to pay the money for the stock and who tendered the money within the time fixed by the contract. In other words, the plaintiff must have done everything necessary to be done on his part, and on the part of the purchaser, so that the only thing upon the part of the defendant that remained to be done was to transfer the stock and to receive the price in cash.

"In this case plaintiff can recover only for commissions in any case in which applications were delivered to the defendant before the plaintiff's authority was revoked.

"The plaintiff cannot recover against the defendant for the sale of stock in any case in which he was not the procuring cause of the sale."

There was much more of the charge but we have quoted sufficiently to indicate the scope of it.

Counsel for appellant argue very strenuously that the motion which we have quoted made at the close of the testimony for the plaintiff should have been granted for the reasons then stated. Many pages of the brief are devoted to this proposition and many authorities are cited. In the instant case the defendant corporation was regularly organized, its capitalization

was duly approved, it was duly licensed to sell its stock. The plaintiff was not a "dealer" within the provisions of section 10 of Act No. 46, Pub. Acts 1915 (3 Comp. Laws 1915, § 11954). He was an "agent" within the provisions of section 12 (§ 11956). Under this latter section the investment company, defendant here, was required to register him and pay the fee therein provided. If defendant failed to do this it cannot urge its violation of the law to defeat recovery by its employee and agent. There is no substantial dispute but what plaintiff was authorized to sell some stock and that upon the receipt of the order of the person desiring to buy the defendant corporation issued the stock to that person. If the plaintiff's version of what happened is true, he did nothing for which he might not recover under the facts disclosed by this record in so far as he had earned his commission under the arrangement he made with defendant.

Fifty assignments of error relate to the omission or rejection of testimony. The case was tried by able counsel who manifested great zeal in the trial. Objection followed objection in quick succession, rulings were made and exceptions were duly taken. The trial judge was kept very busy, and he also kept his head. It would not be practicable to discuss these assignments of error in detail. They have each been examined with care and we shall content ourselves with saying of them that we discover no reversible error.

Thirty-four assignments of error relate to the refusal of the court to give the written requests as prepared. Nine assignments of error relate to the charge as given. Each of these assignments has been examined; we do not think it necessary to discuss them in detail.

The important questions in the case were comparatively few, and they were not very complicated, and the pivotal questions were questions of fact. The jury

allowed the plaintiff to recover only about two-thirds of what he claimed, indicating clearly that they paid special heed to the charge of the court. A reading of that portion of the charge which we have quoted will show that the jury were fully instructed in clear and unambiguous language upon every important phase of the case.

The judgment is affirmed.

BIRD, C. J., and OSTRANDER, STEERE, BROOKE, FEL-LOWS, STONE, and KUHN, JJ., concurred.